## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**DIANE HURLEY**,

Plaintiffs,

v.

**RANGELEY LAKE DEVELOPMENT CO., LLC; PAUL PECK; & PERRY D. WILLIAMS,**

Defendants.

Civil Action No. 04-11891-RCL

**MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2), 12(b)(3), AND 12(b)(6) AND INCORPORATED MEMORANDUM OF LAW**

Defendants Rangeley Lake Development Co., LLC; Paul E. Peck; and Perry D. Williams, pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(6), and 12(b)(3), move this Court for the entry of an Order:  (1) dismissing Plaintiffs' claims in their entirety for lack of personal jurisdiction and/or for improper venue; (2) dismissing Counts V and VII of Kevin Hurley's Complaint, and Counts VI and VIII of Diane Hurley's Complaint, with prejudice, for failure to state a claim upon which relief may be granted; and (3) dismissing with prejudice Plaintiffs' claims against Defendants Peck and Williams for failure to state a claim upon which relief may be granted.

## I.    FACTS

Named Defendant Rangeley Lake Development Co., LLC, does not exist, as far as Defendants know.  *See* Affidavit of Perry D. Williams ("Williams Aff.") (attached as Exhibit A) at ¶ 6.  Rangeley Lake *Resort* Development Company is a Maine Limited Liability Company with offices in Portland, Maine.  *Id*. at ¶ 7.  The Maine entity had nothing to do with any of the allegations in the Complaint.  *Id*.  The entity that used Plaintiffs' services for several weeks in the fall of 2003 is Rangeley Lake Vacation Club, LLC ("RLVC"), a New Hampshire Limited

Liability Company with offices in New Hampshire. *Id.* at ¶ 12. RLVC brokers time-share estates located in Maine. *Id.* at ¶ 17.

In the spring of 2003, Plaintiff Kevin Hurley alleges that he responded to a classified advertisement in a nationally distributed trade publication by traveling to Portland, Maine to meet with Defendant Perry Williams. Complaint of Kevin Hurley ("KH Complaint") at 4-5. Kevin Hurley's services, as well as those of his wife, Plaintiff Diane Hurley, were engaged by RLVC. KH Complaint at 5-6, Complaint of Diane Hurley ("DH Complaint") at 5-6. Plaintiffs rendered services to RLVC first in Maine, and then in New Hampshire. KH Complaint at 5-6, DH Complaint at 5-6.

Plaintiffs allege that while rendering services to RLVC, they were subjected to various forms of inappropriate workplace behavior, including what they allege was sex discrimination. KH Complaint at 6-10, DH Complaint at 5-8. They also allege that they were wrongfully terminated. KH Complaint at ¶ 38, DH Complaint at ¶ 18.

Plaintiffs brought their allegations of sex discrimination before the U.S. Equal Employment Opportunity Commission ("EEOC"), which declined to pursue Plaintiffs' claims because they were unlikely to result in a finding of a violation. *See* DH Complaint, Exhs. A & B; KH Complaint, Exhs. A & B. The EEOC issued a right-to-sue letter, and Plaintiffs filed their complaints in this Court based on these alleged events.

Even if Plaintiffs had sued the proper entity, Plaintiffs chose an entirely improper location for their suit. RLVC has no connections to Massachusetts. RLVC is not domiciled in Massachusetts, but in New Hampshire. RLVC has no office or other physical property in Massachusetts. The company brokers time-share estates located in Rangeley, Maine, so its revenue results from services rendered in New Hampshire and Maine only. *See* Williams Aff. at

2

¶ 17.  RLVC is not licensed or registered to do business in Massachusetts and has never transacted any business there.  *Id.* at ¶¶ 15-16.

Defendants Peck and Williams are residents of the State of Maine.  Defendant Peck's primary occupation is as an attorney.  *See* Affidavit of Paul E. Peck ("Peck Aff.") (attached as Exhibit B) at ¶ 2.   He is licensed to practice law in Maine, not in Massachusetts.  *Id.* at ¶ 3.  He has an office in Maine, not in Massachusetts.  *Id.* at ¶ 4.  He owns no property in Massachusetts. *Id.* at ¶ 5.  Defendant Williams's primary occupation is as a developer.  *See* Williams Aff. at ¶ 2. He does not practice his occupation in Massachusetts.  *Id*.  He has an office in Maine, not in Massachusetts.  *Id.* at ¶ 3.  He owns no property in Massachusetts.  *Id.*  Defendants Peck and Williams have only the random, isolated, fortuitous contacts with Massachusetts that any residents of Maine would have: attendance at Red Sox games, trips out of Logan Airport, and the like.  *See* Peck Aff. at ¶ 6, Williams Aff. at ¶ 4.  At all times relevant to this case, Williams and Peck were acting as agents of RLVC.  *See* Peck Aff. at ¶ 8, Williams Aff. at ¶ 5.

## II.     ARGUMENT

### A.     <u>This Court Lacks Personal Jurisdiction Over The Defendants.</u>

#### 1.     *The Legal Standard*

Once a defendant has contested personal jurisdiction, as the Defendants in this case have, the burden is upon the plaintiff "to demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the [D]ue [P]rocess [C]lause of the Constitution…." *United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant Street Corp*., 987 F.2d 39, 44 (1st Cir. 1993).  The Plaintiffs here must therefore "proffer evidence showing that th[is] court [does] have jurisdiction" over Defendants.  *Andresen v. Diorio*, 349 F.3d 8, 12 (1st Cir. 2003).

Plaintiffs allege that there is both diversity and federal-question jurisdiction over their claims. *See* KH Complaint at 2, DH Complaint at 2. Plaintiffs are wrong, at least in Kevin Hurley's case, because the only federal statute cited in either Complaint is Title VII, and only Diane Hurley's Complaint contains a count of discrimination based on sex. *See* Complaints.

However, Plaintiffs' error is irrelevant. Although the analysis is different when subject-matter jurisdiction is premised on diversity than when it is premised on a federal question, the outcome is the same in this case.

In a diversity case, a district court "must apply the law of the forum state to determine whether personal jurisdiction over the nonresident party is appropriate." *Champion Exposition Servs., Inc. v. Hi-Tech Elec., LLC*, 273 F.Supp. 2d 172, 175 (D. Mass. 2003). "In Massachusetts, a court may exercise personal jurisdiction over a foreign defendant if such jurisdiction is authorized by the state long-arm statute, and its exercise does not offend the Due Process Clause of the Fourteenth Amendment." *Id.*; *see also Tatro v. Manor Care, Inc*., 416 Mass. 763, 767, 625 N.E.2d 549 (1994).[1] In a diversity case brought in district court in Massachusetts, therefore, jurisdiction must be authorized by: (1) the Massachusetts long-arm statute, and (2) the Due Process Clause of the Fourteenth Amendment.

---

[1] There is some confusion as to whether Massachusetts' long-arm statute imposes restrictions on personal jurisdiction beyond those imposed by the U.S. Constitution. *Compare Cambridge Literary Properties v. W. Goebel Przellanfabrik*, 295 F.3d 59, 63 (1st Cir. 2002) ("Massachusetts courts construe section 3(a)'s 'transacting business' requirement as extending jurisdiction as far as permitted by the due process clause of the Fourteenth Amendment") *with Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708, 712 (1st Cir. 1996) ("The [Massachusetts long-arm] statute imposes constraints on personal jurisdiction that go beyond those imposed by the Constitution"). In *Tatro*, the Supreme Judicial Court stated that "if the literal requirements of the statute are satisfied, it *also must be* established that the exercise of jurisdiction … [is] consistent with … the United States Constitution." *Tatro*, 625 N.E.2d at 552 (emphasis added). The Court then conducted a two-step inquiry, but also stated that "the Massachusetts long-arm statute functions as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States." *Id.* at 552-54. The practice of Massachusetts courts is to do a two-step inquiry: first squaring the allegations with the long-arm statute, and then moving on to the U.S. Constitution. *See, e.g.*, *Tatro*, 625 N.E.2d at 553-54; *Beaulieu v. Beaulieu*, 710 N.E.2d 1009, 1010-11 (Mass. App. 1999).

In federal-question cases, the Fifth Amendment, rather than the Fourteenth limits personal jurisdiction. *Lorelai Corp. v. County of Guadalupe*, 940 F.2d 717, 719 (1st Cir. 1991). However, the Fourteenth Amendment can enter the analysis indirectly, in that "a federal court cannot acquire personal jurisdiction over a defendant unless the defendant is properly served with process." *163 Pleasant Street*, 960 F.2d at 1085. If the federal statute at issue does not provide for nationwide service of process, Federal Rule of Civil Procedure 4 requires that service of process be made according to the law of the forum state. *See* Fed. R. Civ. P. 4(e). In this case, the federal statute at issue is Title VII, which does not provide for nationwide service of process. *See Daneshvar v. Graphic Technology, Inc.*, 2005 WL 348312, *2 (D. Kan. Feb. 11, 2005); *Salemi v. Boccador, Inc.*, 2004 WL 943869, at *1 (S.D.N.Y. Apr. 29, 2004); *Clark v. T-Mobile USA, Inc.*, 2004 WL 743868, at *1 n. 3 (N.D. Tex. Apr. 6, 2004). Therefore, personal jurisdiction over Defendants must still be premised on: (1) the Massachusetts long-arm statute, and (2) the Due Process Clause of the Fourteenth Amendment. *Cf. Pike v. Clinton Fishpacking, Inc.*, 143 F. Supp. 2d 162, 166-67 (D. Mass. 2001) (holding that because "the Jones Act does not provide for nationwide service of process, … the Fourteenth Amendment 'minimum contacts' analysis [applies] because the Massachusetts law is subject to Fourteenth Amendment limitations").

2.    *The Massachusetts Long-Arm Statute*

Under the Massachusetts long-arm statute, a defendant may be subjected to personal jurisdiction in "a cause of action … arising from the person's:

> (a) transacting any business in this commonwealth; … [or]

> (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth….

5

M.G.L. c. 223A, § 3.  None of the Plaintiffs' claims fulfill any of these requirements.

As to Section 3(a), no Defendant has "transact[ed] any business" in Massachusetts related to these claims.  The entity with the name closest to the named defendant Rangeley Lake Development Company, which does not exist, is Rangeley Lake Resort Development Company, LLC ("the Maine entity").  The Maine entity has had no contact with Plaintiffs and has nothing to do with the allegations in the Complaint.  *See* Williams Aff. at ¶ 7.  Therefore, none of Plaintiffs' claims could possibly have "arisen from" any actions by the Maine entity, let alone any contacts with Massachusetts by the Maine entity.  In any event, the Maine entity has no purposeful contacts with Massachusetts.  *Id.* at ¶¶ 9-11.  It is a Maine Limited Liability Company with offices in Portland, Maine.  *Id.* at ¶ 7.

Even if Plaintiffs had sued the proper entity, their claims would still fail to meet the requirements of the Massachusetts long-arm statute.  RLVC is a New Hampshire Limited Liability Company with offices in Salem, New Hampshire.  *Id.* at ¶ 12.  RLVC is not registered to do business in Massachusetts and does not do business in Massachusetts.  *Id.* at ¶¶ 15-16.

Claims against Defendants Peck and Williams similarly fail to meet the requirements of the Massachusetts long-arm statute.  Peck and Williams are residents of Maine.  *See* Peck Aff. at ¶ 1, Williams Aff. at ¶ 1.  Peck's primary occupation is as an attorney.  *Id.* at ¶ 2.  He is not licensed to practice law in Massachusetts, he has no office in Massachusetts, and has no contacts with Massachusetts that could possibly support personal jurisdiction here.  *Id.* at ¶¶ 3-6.  Defendant Williams is a resident of Maine.  *See* Williams Aff. at ¶ 1.  His primary occupation is as a developer.  *Id.* at ¶ 2.  He does not practice his occupation in Massachusetts, he does not have an office in Massachusetts, and he does not own any property in Massachusetts.  *Id.* at ¶¶ 2-

3.  Both individual Defendants have only random, isolated, fortuitous contacts with Massachusetts.  *Id.* at ¶ 4, Peck Aff. at ¶ 6.

The only connection to Massachusetts presented by Plaintiffs is their allegation that the organizational Defendant advertised for employment in a trade publication for the resort industry that is published nationally, and which Plaintiffs received at their home in Massachusetts as a result of their own subscription.  DH Complaint at 4; KH Complaint at 4.  Advertising in a national trade publication is not, however, transacting business *in Massachusetts*.  The delivery is the only event that happened in Massachusetts, and by then, any "business transaction" related to the placing of the advertisement was complete.  Plaintiffs' own allegations make it clear that any business – whether discussion of Plaintiffs' provision of services, or Plaintiffs' actual services for RLVC – was transacted in Maine and New Hampshire.  KH Complaint at 4-10, DH Complaint at 5-9.  Not one of Plaintiffs' claims against any Defendant, therefore, arises out of the transaction of business in Massachusetts.

Furthermore, by Plaintiffs' own admissions, any alleged tortious acts by Defendants occurred in New Hampshire.  *See* KH Complaint at 5-10, DH Complaint at 5-8.  Given that the alleged actions occurred outside Massachusetts, Plaintiffs must, in regard to their tort claims, establish that Defendants "regularly do[] or solicit[] business, or engage[] in any other persistent course of conduct, or derive[] substantial revenue from goods used or consumed or services rendered, in this commonwealth…."  M.G.L. c. 223A, § 3(d).  None of these statements is true about any of the Defendants.  As stated above, all potential Defendants – the Maine entity, RLVC, Peck, and Williams – lack contacts with Massachusetts.  *See supra* pp. 6-7.  There is therefore no regular intercourse with Massachusetts that would support the exercise of jurisdiction under Section 3(d) over any Defendant.

7

Plaintiffs have failed to establish that the Massachusetts long-arm statute authorizes personal jurisdiction over any Defendant. For this reason alone, all of the claims in both of Plaintiffs' Complaints must be dismissed.

### 3.    The Due Process Requirements

In addition to exceeding the reach authorized by the Massachusetts long-arm statute, exercising jurisdiction over the Defendants here would offend the United States Constitution. There are two ways of asserting personal jurisdiction over a defendant: general jurisdiction and specific jurisdiction. "Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities, such as when the litigation itself is founded directly on those activities." *Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998). "General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001). Plaintiffs have failed to establish personal jurisdiction under either standard.

### a.    PLAINTIFFS HAVE FAILED TO ESTABLISH GENERAL PERSONAL JURISDICTION IN MASSACHUSETTS OVER ANY DEFENDANT.

General personal jurisdiction requires that contacts with the forum state be "continuous and systematic." *Pritzker v. Yari*, 42 F.3d 53, 60 (1st Cir. 1994). "[I]t is the plaintiff's burden to establish facts sufficient to sustain general in personam jurisdiction…." *Id.*

Defendants have virtually no contacts with Massachusetts, let alone "continuous and systematic" contacts. *See supra* pp. 6-7. Plaintiffs have brought forward only one fact that could possibly constitute a contact with Massachusetts: RLVC allegedly placed a classified advertisement in a nationally distributed trade magazine, which was delivered to Plaintiffs' home

as a result of *their* subscription to the magazine.  KH Complaint at 4, DH Complaint at 4.  This

single, attenuated contact is patently insufficient to show "continuous and systematic contacts"

with a forum.

In *Swiss American Bank*, 274 F.3d at 619-20, the First Circuit determined that placing

*twelve* advertisements in a magazine, subscribing to a credit card company, entering into a

contract and a joint venture, lending money, and other contacts were *insufficient* to constitute

"continuous and systematic contacts" with the forum.  Moreover, in the leading case of

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984), the Supreme

Court found no general personal jurisdiction in Texas where the defendant company had sent its

chief executive officer to Houston for contract negotiations, accepted checks drawn on a Houston

bank, purchased substantial equipment and services from a Texas corporation, and sent personnel

to Texas for training.  The *Helicopteros* Court found it significant that, like the Defendants here,

the defendant in that case was "never… licensed to do business in" the forum state.  *Id*.  If these

facts are not enough to establish general personal jurisdiction, the placement of a single

advertisement in a national publication is certainly insufficient.

> b.    PLAINTIFFS HAVE FAILED TO ESTABLISH SPECIFIC PERSONAL
> JURISDICTION IN MASSACHUSETTS OVER ANY DEFENDANT.

In order to establish that specific personal jurisdiction comports with the Fourteenth

Amendment, a plaintiff must show that *all* of the following requirements are met:

> First, the claim underlying the litigation must directly arise out of,
> or relate to, the defendant's forum-state activities. Second, the
> defendant's in-state contacts must represent a purposeful availment
> of the privilege of conducting activities in the forum state, thereby
> invoking the benefits and protections of that state's laws and
> making the defendant's involuntary presence before the state's
> courts foreseeable.  Third, the exercise of jurisdiction must, in light
> of the Gestalt factors, be reasonable.

*Barrett v. Lombardi*, 239 F.3d 23, 26 (1st Cir. 2001).  None of these requirements is met here.

<u>i.</u>     <u>Plaintiffs' Claims Do Not "Arise Out of" Any Alleged
Forum-State Contacts.</u>

Under the First Circuit's interpretation of the "relatedness" requirement of specific

jurisdiction, Plaintiffs must show, in the absence of a "narrow" exception for certain unusual

circumstances, that Defendants' contact with the forum was a *proximate* cause of Plaintiffs'

alleged injuries.  *Nowak v. Tak How Investments, Ltd*., 92 F.3d 708, 714-17 (1st Cir. 1996).

Plaintiffs' claims arise out of their allegations that Defendants mistreated Plaintiffs while

Plaintiffs were performing services for RLVC at RLVC's offices in New Hampshire.  As

Plaintiffs admit, any business relationship was initiated when "Kevin Hurley … traveled to

Portland[,] Maine" to discuss the possibility of rendering services to RLVC.  KH Complaint at

10, DH Complaint at 4.  In other words, Plaintiffs traveled outside the forum state and were

allegedly injured there; Defendants did not reach into the forum to allegedly injure Plaintiffs.  All

of the alleged events giving rise to their claims happened in New Hampshire, where RLVC's

offices are located.  Plaintiffs' claims therefore do not arise out of Defendants' contacts with

Massachusetts, but rather, out of Plaintiffs' contacts with New Hampshire.

Other than Plaintiffs' residency, the only contact with Massachusetts present in this case

is Plaintiffs' allegation that "Rangeley Lake Development Company, LLC" placed an

advertisement in a national trade paper that was distributed to a subscriber in Massachusetts.  *See*

KH Complaint at 4.  First of all, the allegation that a completely separate Maine entity placed an

advertisement that made its way to Massachusetts has nothing to do with whether the entity that

hired Plaintiffs – RLVC – has contacts with Massachusetts.  Second, even if Plaintiffs had

alleged that RLVC placed the alleged advertisement, such placement would still not come close

to being the legal cause of their injuries.  Plaintiffs have made no claims of false advertising,

trademark infringement, copyright infringement, or any other claim that could have been

proximately caused by the placing of this advertisement. Plaintiffs' claims, rather, have to do with the alleged behavior of Defendants in New Hampshire, where Plaintiffs rendered services to RLVC. Plaintiffs have therefore failed to establish the necessary "relatedness" prong for specific personal jurisdiction.

Furthermore, Plaintiffs do not allege that Defendants Peck and Williams, in their personal capacities, have had any contact at all with Massachusetts related to Plaintiffs' claims. Rather, they allege, "Defendant RLD, its agents, representatives and/or employees" placed the alleged classified advertisement in the Resort Trades Magazine. DH Complaint at 4, KH Complaint at 4. Therefore, Plaintiffs have also failed to meet this requirement as regards Defendants Peck and Williams.

<div align="center">

ii.     Advertisement In A Nationally Circulated Publication Does
        Not Constitute Purposeful Availment.

</div>

In addition to being unrelated to Plaintiffs' claims, the alleged placement of an advertisement in a nationally circulated trade publication was not "a purposeful availment of the privilege of conducting activities in" Massachusetts, "thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable…." *Barrett*, 239 F.3d at 26.

Many courts have found specifically that advertisements in nationally circulated publications do not constitute purposeful availment and cannot alone support even specific personal jurisdiction. *See, e.g., Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir. 1994) ("evidence of mere placement of advertisements in nationally distributed papers or journals does not rise to the level of purposeful contact with a forum required by the Constitution in order to exercise personal jurisdiction over the advertiser"); *Sunbelt Corp. v. Noble, Denton & Assoc.*, 5 F.3d 28, 33 n.10 (3d Cir. 1993) (single ad in a

<div align="center">11</div>

national publication insufficient to establish the contacts necessary for specific jurisdiction); *Singletary v. B.R.X., Inc.*, 828 F.2d 1135, 1136 (5th Cir. 1987) ("advertising in national publications is not in itself sufficient to subject a defendant to personal jurisdiction"); *Ameritec Corp. v. Ameritech Corp.*, 1986 WL 10702 at *6 (C.D. Cal. 1986) ("advertisement in national publications does not establish, without more, that the moving defendants have purposefully availed itself [sic] of the privilege of conducting activities within the forum or invoked the benefits and protections of its laws"); *but see SEC v. Carrillo*, 115 F.3d 1540, 1545 (11th Cir. 1997) ("advertising that is reasonably calculated to reach the forum may constitute purposeful availment of the privileges of doing business in the forum").

This Court has itself noted the general consensus: "In determining whether the defendant has 'purposefully availed' itself of the benefits of the forum state, courts seem reluctant to base jurisdiction … on advertising alone." *Hasbro Inc. v. Clue Computing Inc*., 994 F.Supp. 34, 43 (D. Mass. 1997). This consensus is further confirmed by analogy to the Supreme Court's holding that "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 112 (1987). Similarly, the mere awareness that the distribution of the Resort Trades Magazine might or would sweep RLVC's classified advertisement into Massachusetts did not convert the mere act of placing the classified advertisement into the magazine into an act purposefully directed toward Massachusetts. For this reason, Plaintiffs have failed to establish the "purposeful availment" prong of the personal jurisdiction test.

iii.    The Exercise Of Jurisdiction Over Defendants Would Not
        Be Reasonable In Light Of The Gestalt Factors.

The Gestalt factors include:

> (1) the defendants' burden of appearing; (2) the forum state's
> interest in adjudicating the dispute; (3) the plaintiff's interest in
> obtaining convenient and effective relief; (4) the judicial system's
> interest in obtaining the most effective resolution of the
> controversy, and (5) the common interests of all sovereigns in
> promoting substantive social policies.

*Nowak,* 94 F.3d at 712-717.

Most of the Gestalt factors are irrelevant to this case. While Defendants concede that
their burden of appearing is minimal because of the proximity among Maine, New Hampshire,
and Massachusetts, that proximity also means that Plaintiffs' interest in convenient relief would
not be harmed by having the case heard in another of these states. Similarly, the judicial
system's interest in obtaining the most effective resolution does not point in any particular
direction. And because the three jurisdictions do not have marked differences in their
approaches to the claims brought here, there are no substantive social policies to be promoted by
any sovereign involved. However, factor (2) is relevant. Massachusetts does not have any
special interest in adjudicating this dispute, particularly in that it is likely that New Hampshire or
Maine law, rather than Massachusetts law, would apply to these claims. Thus, if the Gestalt
factors favor anybody, they favor Defendants.

The absence of *any one* of the three required prongs for the exercise of personal
jurisdiction – relatedness, purposeful availment, and the Gestalt factors – bars the exercise of
personal jurisdiction. In this case, Plaintiffs have failed to establish *any* of the three prongs.
Therefore, Plaintiffs' claims must be dismissed in their entirety for lack of personal jurisdiction
over any of the Defendants.

13

B.    <u>Several Counts Of The Plaintiffs' Complaints Fail To State Claims Upon Which Relief May Be Granted.</u>

When evaluating a motion under Rule 12(b)(6), the Court accepts as true the well-pleaded facts in the Complaint.  *See Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31, 34 (1st Cir. 2002).  Dismissal is warranted when it appears that the plaintiff can prove no set of facts to support the claim for relief.  *See Roma Constr. Co. v. Russo*, 96 F.3d 566, 569 (1st Cir. 1996).

1.    *Plaintiffs Have Failed To State A Claim For Tortious Interference.*

Under the laws of Massachusetts, Maine, and New Hampshire, and as common sense alone would dictate, a party cannot tortiously interfere with its own contract or business relationship.  *See Alexander v. Fujitsu Business Comm. Sys., Inc.*, 818 F.Supp. 462, 470 (D.N.H. 1993) (holding that an employee acting as an agent of an employer could not tortiously interfere with a co-employee's contract with the employer because the allegedly interfering employee was not a third party to the contract); *Riseman v. Orion Research, Inc.*, 475 N.E.2d 398, 400 (Mass. 1985) (because tortious interference "involves one who … causes a third person not to enter into or continue a business relationship with another, …. [the defendant] could not be liable for tortious interference with its own relationship with" the plaintiff); *Perkins v. City Enterprises I, LLC*, 2004 WL 3196205, *9 (Me. Super. 2004) ("At the outset, a claim for tortious interference with a contract cannot be brought against someone who is a party to the contract in question"); *Restatement (Second) of Torts* § 766 (defining the tort as interference with a "contract between another and a third person"); *see also Richards v. Relentless, Inc.*, 341 F.3d 35, 43 (1st Cir. 2003) (holding that "for the action of tortious interference with contractual relations to be maintained the defendant must be a stranger to the contract"); *National Employment Serv. Corp. v. Olsten Staffing Service, Inc.*, 145 N.H. 158, 162, 761 A.2d 401, 406 (2000) ("We have previously

14

applied the *Restatement (Second) of Torts* to actions for tortious interference with contractual relations").

Despite this well-established rule, Plaintiffs nevertheless allege that "Defendant, through its agents, tortiously caused interference with Plaintiff[s'] contractual business relations, … causing the discontinuance of [their] established … business relationship[s] with Defendant and the income generated and promised therefrom."  *See* DH Complaint at 11, KH Complaint at 12. In their very pleadings, therefore, Plaintiffs acknowledge that Defendant and Plaintiff were both parties to the relationship with which Plaintiffs allege Defendant to have tortiously interfered.

Naming Peck and Williams as defendants cannot save this claim.  Plaintiffs make it clear in their pleading that "Defendant" allegedly interfered "through its agents."  Plaintiffs thus acknowledge that Peck and Williams were acting in the scope of their agency when they committed the acts that Plaintiffs wish to characterize as tortious interference.  "[T]he weight of authority is to the effect that a corporate officer can 'interfere' with a corporation's contracts, in a legally relevant sense, only by conduct undertaken outside, or beyond the scope of, his official capacity." *Griffen v. Schneider*, 995 F.2d 1061, 1993 WL 220403, at *1 (1st Cir. June 24, 1993) (citing *Michelson v. Exxon Research & Eng. Co.*, 808 F.2d 1005, 1007-08 (3d Cir. 1987)); *Rao v. Rao*, 718 F.2d 219, 225 (7th Cir. 1983); *American Trade Partners, L.P. v. A-1 Int'l Importing Enters., Ltd.*, 757 F.Supp. 545, 555 (E.D. Pa. 1991); *Hickman v. Winston County Hosp. Bd.*, 508 So. 2d 237, 239 (Ala. 1987); *Restatement (Second) of Torts* § 766).  Because Peck and Williams were acting within the scope of their employment by RLVC, they may not be sued for tortious interference with any alleged contract or business relationship between Plaintiffs and RLVC. Plaintiffs fail utterly to state a claim for tortious interference against any of the Defendants.

2.    *If Plaintiffs Were Employees, Their IIED Claims Are Barred By The Workers' Compensation Laws.*

a.    NEW HAMPSHIRE

If Plaintiffs were employees of the organizational Defendant, as they have represented to the EEOC in their employment-discrimination suits, New Hampshire's Workers Compensation Law bars Plaintiffs' claims for Intentional Infliction of Emotional Distress against RLVC.  Under New Hampshire's Chapter 281-A:8, an employee has "waived all rights of action whether at common law or by statute … (a) [a]gainst the employer …" This waiver of claims against the employer includes the tort of intentional infliction of emotional distress.  *Karch v. BayBank FSB*, 794 A.2d 763, 770-71 (N.H. 2002).[2]  Under the plain language of this statute, therefore, Plaintiffs' claims against the organizational Defendant are barred if, as they claim, they were employees of it.

b.    MAINE

If Maine law is applied to Plaintiffs' claims, and their representation that they were employees of the organizational Defendant is accepted, they are barred from bringing their claims for intentional infliction of emotional distress against all Defendants.  The Maine Workers' Compensation Act provides that an employer that obtains workers' compensation insurance "is exempt from civil actions … at common law … involving personal injuries sustained by an employee arising out of and in the course of employment."  39-A M.R.S.A. § 104.  Furthermore, "[t]hese exemptions from liability apply to all employees, supervisors,

---

[2] The court in *Karch* acknowledged that a 2001 amendment to the New Hampshire Workers Compensation statute, which provided that a compensable injury "shall not include a mental injury if it results from any disciplinary action, work evaluation, job transfer, layoff, demotion, termination, or any similar action, taken in good faith by an employer," could change this result for certain types of claims of intentional infliction of emotional distress.  In this case, however, if the Plaintiffs' allegations are taken as true, these actions were not "taken in good faith by [their] employer."  Therefore, if true, their claims would have been compensable under the New Hampshire Act, and the Plaintiffs are barred from bringing suit at common law.

officers and directors of the employer for any personal injuries arising out of and in the course of employment, or for death resulting from those injuries." *Id.*  It has recently been confirmed by the District of Maine that claims for intentional torts, such as intentional infliction of emotional distress, are barred by the Act, as long as the injury "ar[ose] out of and in the course of employment." *Frank v. L.L. Bean*, 352 F.Supp. 2d 8, 11-13 (D. Me. 2005) (holding that a claim for intentional infliction of emotional distress based on alleged sex discrimination was barred by Maine Workers' Compensation Act).

There is no doubt but that any emotional distress alleged by Plaintiffs arose out of and in the course of employment.  They allege that their "emotional distress" arose out of "the Defendant's, and its representatives, agents, and employees, intentional discriminatory conduct." DH Complaint at 10-11; KH Complaint at 11-12.  The alleged conduct occurred at work, while both Plaintiffs were engaged in the performance of their duties.  They arose out of the employment, in that they were allegedly related to sex discrimination in employment matters. Indeed, as the District of Maine has stated, "it is difficult to think of a claim that is more intrinsically work-related than sexual harassment alleged to have created a hostile work environment." *Frank*, 352 F.Supp. 2d at 12.  The organizational Defendant and its officers Peck and Williams are therefore exempt from Plaintiffs' claim of Intentional Infliction of Emotional Distress pursuant to 39-A M.R.S.A. § 104.

c.    MASSACHUSETTS

In Massachusetts, as in Maine, "[c]ommon law actions are barred by the exclusivity provision of the workers' compensation act where… the plaintiff is shown to be an employee; his condition is shown to be a 'personal injury' within the meaning of the [act]; and the injury is shown to have arisen out of and in the course of ... employment." *Green v. Wyman-Gordon Co.*,

17

664 N.E.2d 808, 813 (Mass. 1996).  *See also* M.G.L. c. 152, § 24.  Intentionally inflicted

emotional distress is such an injury.  *See Green*, 664 N.E.2d at 813.  As established above, the

emotional injuries alleged by Plaintiffs, if they exist, arose out of and in the course of

employment.  Therefore, Plaintiffs' claims for Intentional Infliction of Emotional Distress

against their alleged former employer would be barred under Massachusetts law.

> 3.  *The Plaintiffs Cannot State Claims Against Defendants Peck And Williams Personally.*

It was entirely improper and inappropriate for Plaintiffs to have sued Defendants Peck

and Williams individually.  Plaintiffs have brought no allegations at all against Defendants Peck

and Williams, in their individual capacities, that could possibly sustain any of the claims against

them.  In fact, Plaintiffs specify, at multiple points in their Complaints, that it was "Defendant" –

singular – through its "agents, representatives, and employees" who allegedly injured them.  *See,*

*e.g.*, KH Complaint at 10-12; DH Complaint at 8-11.  The allegations in the Complaints of

inappropriate workplace behavior do not involve Peck or Williams.  *See* KH Complaint at 5-10;

DH Complaint at 4-8.  There is no allegation that either Plaintiff entered a contract with Peck or

Williams.  There are no facts alleged that would permit the Court to conclude that Peck and

Williams were personally Plaintiffs' employers.  For these reasons, there is not a single factual

allegation that could support a claim against Peck or Williams for Breach of Contract, Wrongful

Termination, Sex Discrimination, Detrimental Reliance, Intentional Infliction of Emotional

Distress, Good Faith and Fair Dealing, or Tortious Interference with a Business Relationship.

Peck and Williams are not liable as Members for the acts or debts of RLVC or the Maine entity.

*See* N.H.R.S.A. § 304-C:8; 31 M.R.S.A. § 645.  All claims against Peck and Williams should

therefore be dismissed with prejudice.

C.    <u>Venue Is Not Proper In This District.</u>

Whether Plaintiffs' claims arise under diversity or federal-question jurisdiction, they may

be brought:

> only in (1) a judicial district where any defendant resides, if all
> defendants reside in the same State, (2) a judicial district in which
> a substantial part of the events or omissions giving rise to the claim
> occurred, or a substantial part of property that is the subject of the
> action is situated, or (3) a judicial district in which any defendant is
> subject to personal jurisdiction at the time the action is
> commenced, if there is no district in which the action may
> otherwise be brought.

28 U.S.C. §§ 1391(a) and (b).  Plaintiffs' claims do not meet any of these criteria.

The first potential basis for venue is not fulfilled because no Defendant resides in

Massachusetts.  The entity with the name closest to that of the named Defendant, Rangeley Lake

Resort Development Company, is domiciled in Maine.  *See* Williams Aff. at ¶ 7.  RLVC is

domiciled in New Hampshire.  *Id.* at ¶ 14.  Defendant Williams resides in Maine.  *Id.* at ¶ 1.

Defendant Peck resides in Maine.  *See* Peck Aff. at ¶ 1.

The second potential basis for venue is not fulfilled because "a substantial part of the

events or omissions giving rise to the claim" did not occur in Massachusetts.  The alleged events

or omissions giving rise to Plaintiffs' claims were:  the contract between Kevin Hurley and

RLVC, which was entered in Maine; inappropriate workplace behavior, which was alleged to

have taken place in New Hampshire; and the termination of Plaintiffs' services, which took place

in New Hampshire.  No events, and certainly not a "substantial part of the events," occurred in

Massachusetts.  In fact, even though Plaintiffs are themselves residents of Massachusetts, they

traveled to Maine to sign the contract they allege Defendants breached; they traveled to New

Hampshire to perform their services for Defendant RLVC; and they were in New Hampshire

when they allege they were badly treated and wrongfully terminated.

1013778.1

The one Massachusetts event brought forth by Plaintiffs – that they viewed a classified advertisement at their home – does not alone constitute any part, much less a "substantial part," of any of their claims.  There are many elements to their claims – for Breach of Contract, Wrongful Termination, Sex Discrimination, Detrimental Reliance, Intentional Infliction of Emotional Distress, Good Faith and Fair Dealing, and Tortious Interference with a Business Relationship – but none of these elements would have anything to do with the advertisement Plaintiffs allege that they viewed.  Thus, no substantial part of the events giving rise to Plaintiffs' claims occurred in Massachusetts.

Finally, the third potential basis for venue is not fulfilled because there *is* a district in which the action may otherwise be brought – the District of New Hampshire.  Further, Plaintiffs lack personal jurisdiction over all Defendants.  Therefore, Massachusetts is an improper venue for Plaintiffs' claims.

## III.    CONCLUSION

For all of the foregoing reasons, Defendants' motion to dismiss should be granted in its entirety.

Dated:  April 25, 2005

Respectfully submitted,


/s/ Roy T. Pierce
Roy T. Pierce, BBO# 562811
Attorney for Defendants

PRETI, FLAHERTY, BELIVEAU, PACHIOS & HALEY, LLP
One City Center, P. O. Box 9546
Portland, ME  04112-9546
(207) 791-3000
rpierce@preti.com

1013778.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 25, 2005, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

**PAUL L. KENNY, ESQUIRE**

mma63@msn.com

**RICHARD C. CHAMBERS, JR., ESQUIRE**

evan@chamberslawoffice.com

<div style="margin-left:40%">

/s/ Roy T. Pierce
Roy T. Pierce
PRETI, FLAHERTY, BELIVEAU, PACHIOS & HALEY, LLP
One City Center
P.O. Box 9546
Portland, ME  04112-9546
Tel: (207) 791-3000
Fax: (207) 791-3111

</div>