UNITED STATES DISTRICT COURT
District of Massachusetts

| | |
|---|---|
| **DIANE HURLEY,**<br>    Plaintiff,<br><br>v.<br><br>**RANGELEY LAKE DEVELOPMENT CO., LLC, PAUL PECK & PERRY D. WILLIAMS,**<br>    Defendants. | )<br>)<br>)<br>)<br>)  DOCKET NO. 04-11891-RCL<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OF THE PLAINTIFF, DIANE HURLEY, IN OPPOSITION TO DEFENDANTS' AMENDED MOTION TO DISMISS

The Plaintiff, Diane Hurley ("Hurley"), submits this memorandum in opposition to Defendants' Rangeley Lake Development Company, LLC, Paul Peck, and Perry D. Williams (collectively "Defendants") Amended Motion to Dismiss ("Motion to Dismiss" or "Amended Motion to Dismiss"), pursuant to Fed.R.Civ.P.12(b)(2), 12(b)(3), and 12(b)(6).

This Memorandum is accompanied and supported by the following documents: (1) Affidavit of Diane Hurley in Support of Opposition to Defendants' Motion to Dismiss ("D.Hurley Aff."); (2) Affidavit of Kevin Hurley in Support of Opposition to Defendants' Motion to Dismiss ("K.Hurley Aff.") and; (3) Affidavit of Charles Mathison in Support of Opposition to Defendants' Motion to Dismiss ("C. Mathison Aff.").

Plaintiffs, Diane Hurley, and her husband, Kevin Hurley, who is a Plaintiff in a separate cause of action, United States District Court, District of Massachusetts, Docket No. 04-11892-NG file herewith a Motion to Consolidate both matters based on their claims arising from substantially the same events. Moreover, the Defendants' have specifically referenced Kevin Hurley's matter in their Motion to Dismiss.

1

Plaintiffs submit that Defendants have submitted minimal facts in support of their motion, while ignoring the facts relating to the very essence and intent of the agreement between the parties to wit: establishing a marketing and sales program directly soliciting and serving Massachusetts. The intent of Defendants' Amended Motion to Dismiss appears intended to obfuscate and delay the necessary litigation in this matter and is devoid of merit. Plaintiffs' respectfully request the Court to deny the Defendants' Amended Motion to Dismiss.

## STATEMENT OF FACTS

The Plaintiffs, Kevin Hurley and Diane Hurley, are both Massachusetts residents and citizens. D.Hurley Aff. at ¶ 1. K.Hurley Aff. at ¶ 1. The Plaintiffs now agree that Rangeley Lake Development Company, LLC does not exist. However, as admitted by Defendants, the only dissimilarity within Plaintiffs caption is that the word "Resort" is left out of Defendant Rangeley Lake's name. D.Hurley Aff. at ¶¶ 8, 11. K.Hurley Aff. at ¶¶ 8, 11. Service of both Plaintiffs Complaints were made at the same address and received by the same individuals. The Defendants appear to have created Rangeley Lake Vacation Club, LLC in New Hampshire subsequent to negotiating a contract with Plaintiff, Kevin Hurley, for the purposes of selling time-shares located in Maine to individuals, in particular those residing in Massachusetts. D.Hurley Aff. at ¶¶ 10, 11, 28, 34, 35. K.Hurley Aff. at ¶¶ 10, 11, 29, 35, 36. C.Mathison Aff. at ¶¶ 6, 7, 8. Both companies maintained offices in Portland, Maine at the same location and the owners and officers of both companies are the same named defendants in both Plaintiffs' Complaints. D.Hurley Aff. at ¶¶ 10, 11, 16. K.Hurley Aff. at ¶¶ 10, 11, 16. Therefore, the Plaintiff, Diane Hurley, is filing a Motion to Amend her Complaint to include the correct technical name of the Defendant for legality purposes, however the merits of the matter remain the same no matter which name is attributed to Rangeley Lake. New Hampshire's Secretary of

State, Corporations Division, reports that Rangeley Lake Vacation Club, LLC was created on July 7, 2003 (See Business Name History Report from the New Hampshire Secretary of State's Online Records Report attached to affidavits). The contractual negotiations leading to the claims set forth in Plaintiffs' Complaints culminated prior to July 2003. Therefore, for the purposes of this Memorandum, the Plaintiff shall refer to the Defendants collectively as Defendants or "RL", which includes Rangeley Lake Development Company, LLC., with and without the word "Resort" and Rangeley Lake Vacation Club, LLC.

In or about April and May of 2003, Defendant RL, its agents, representatives and/or employees placed a classified advertisement for employment opportunities within the *Resort Trades Magazine* ("RTM") seeking to employ persons to open a Boston area office for the purpose of establishing a location to conduct business in Massachusetts to attract Massachusetts residents to purchase time shares in Maine. D.Hurley Aff. at ¶¶ 14, 15. K.Hurley Aff. at ¶¶ 14, 15. RTM is a trade publication that is published nationwide with substantial subscribers in Massachusetts.

Plaintiffs, at their home and office located in Stoneham, Massachusetts, received the magazine containing RL's solicitation. Defendants' urge that this was the only connection with Massachusetts, therefore, the contacts with Massachusetts are insufficient. Additionally, they suggest that a New Hampshire Corporation other than Defendants' Corporation was the contracting party. The actual facts belie their representations.

The Defendant Corporation, RL, not the New Hampshire Corporation, placed the article. After its receipt, Plaintiffs began negotiations via telephone, email and facsimile from their Stoneham, Massachusetts home office with the Defendants, regarding Defendants opening of an office within the metro-Boston area. Plaintiff, Kevin Hurley, also traveled from Massachusetts

to Portland, Maine to meet with, Perry Williams ("Williams") one of Defendant's owners as well as its Director of Sales, Patrick Warner ("Warner") to discuss opening an office in Woburn Massachusetts to sell its timeshares to Massachusetts residents. D.Hurley Aff. at ¶¶ 16, 17, 18, 19, 20. K.Hurley Aff. at ¶¶ 16, 17, 18, 19, 20.

During the negotiations Plaintiffs, at Defendants' urging, began scouting locations throughout Woburn and Reading Massachusetts. Perry Williams and Patrick Warner subsequently traveled to Massachusetts and together with Plaintiff Kevin Hurley investigated various prospective office locations in Woburn and Reading, Massachusetts. D.Hurley Aff. at ¶ 19. K.Hurley Aff. at ¶ 19.

Throughout this exploration Kevin Hurley advised Defendants' that the Woburn/Reading area was saturated and recommended that they open an office in Salem, New Hampshire, which would allow them to conduct business in Massachusetts from the office in Salem. Diane Hurley Aff. at ¶ 21. K.Hurley Aff. at ¶ 21.

A Salem, New Hampshire, office, just over the border from Massachusetts would allow the Defendants' to draw prospective Massachusetts clients from within a hour radius. Defendant Paul Peck disagreed. D.Hurley Aff. at ¶¶ 23, 24, 25, 26. K.Hurley Aff. at ¶¶ 23, 24, 25, 26.

After numerous phone conversations placed from Plaintiffs' Stoneham, Massachusetts residence Kevin Hurley again advised that they open an office in Salem, New Hampshire because it would be sufficiently removed form the Woburn area, which was heavily saturated and would provide a location close enough to Massachusetts to target its residents to travel to Salem. D.Hurley Aff. at ¶ 22. K.Hurley Aff. at ¶ 22.

Plaintiffs were instructed to meet with Paul Peck in Portland, Maine during which the parties again discussed opening an office in Woburn Massachusetts to sell Rangeley Lake

4

timeshares to Massachusetts residents. At this meeting they were introduced and met with the owners, Paul Peck, Perry Williams, and Patrick Warner their Sales Director. The Plaintiffs conveyed to them that they were willing to do whatever it took to make the project a success. D.Hurley Aff. at ¶ 24. K.Hurley Aff. at ¶ 24.

Paul Peck, in particular, continued to push for a Boston location to sell and service Massachusetts residents as the main component of the business. D.Hurley Aff. at ¶ 25. K.Hurley Aff. at ¶ 25. In early June, after being convinced they could do business in Massachusetts from the Salem office, Perry Williams offered Kevin Hurley a Sales Manager position, as an "independent contractor" and he accepted. D.Hurley Aff. at ¶ 26. K.Hurley Aff. at ¶ 26.

No written contract was signed at this time, however, Perry Williams instructed Kevin to work from his Stoneham home as an independent contractor, to recruit sales representatives from within Massachusetts and to find a suitable Massachusetts location to open an office for the purposes of selling Defendants' Maine timeshares to Massachusetts residents. Kevin Hurley explained that he knew of other potential sales candidates including his wife, Diane Hurley. Defendants telemarketing efforts were directed towards drawing clients from the Commonwealth of Massachusetts, up to and including registering for receipt of the "DO NOT CALL LIST" within Massachusetts. D.Hurley Aff. at ¶¶ 26, 27, 28. K.Hurley Aff. at ¶¶ 27, 28, 29.

On, June 18, 2003 Plaintiffs received an email from Patrick Warner, at their AOL email account (See Patrick Warner Email to Kevin Hurley attached to affidavits). The e-mail reduced to writing Kevin's salary of One Hundred Sixty Four Thousand ($164,000.00) per year based on a five-year project. The email also stated that the Salem office would open in a week. D.Hurley Aff. at ¶ 29. K.Hurley Aff. at ¶ 30.

The e-mail further stated that Kevin Hurley would work in Maine before transitioning back to Massachusetts to work from his home in Stoneham as an independent contractor, to recruit sales representatives from within Massachusetts and to decorate the office for the purposes of selling its Maine timeshares to Massachusetts residents. D.Hurley Aff. at ¶ 30. K.Hurley Aff. at ¶ 31.

In fact, the New Hampshire Corporation that Defendants allege is the appropriate Corporation was not formed until July 7, 2003. (See Annual Report History Document attached to affidavit) This was well after the agreement was reached with Plaintiffs. D.Hurley Aff. at ¶ 31. K.Hurley Aff. at ¶ 32.

Plaintiff, Kevin Hurley, operated out of Massachusetts commuting weekly to Maine until the Salem office opened in October 2003. D.Hurley Aff. at ¶ 32. K.Hurley Aff. at ¶ 33.

After requesting a written contract for months, the parties executed an independent contractor agreement for Kevin Hurley with an entity he believed to be Defendants. Perry Williams and Kevin Hurley signed this contract. (See Independent Contractor Agreement Kevin Hurley attached to affidavit.) D.Hurley Aff. at ¶ 33. K.Hurley Aff. at ¶ 34. Both Plaintiffs were told that Defendants were going to call the Salem, New Hampshire office Rangeley Lake Vacation Club, however they were not advised that it was a separate corporation. They were controlled and directed by Defendants at all times and reported to them. Both Plaintiffs believed the name Rangeley Lake Vacation Club was used as a marketing tool. D.Hurley Aff. at ¶¶ 9, 10. K.Hurley Aff. at ¶¶ 9, 10.

Defendants' telemarketers heavily targeted Massachusetts citizens and enticed them to travel to New Hampshire to attend timeshare presentations. They specifically offered potential Massachusetts clients that traveled to the Salem New Hampshire location, for sales presentation,

free weekend getaways such as the *Oak and Spruce Resort* in Lee, Massachusetts and/or at a Cape Cod resort located in the Hyannis area. D.Hurley Aff. at ¶¶ 34, 35. K.Hurley Aff. at ¶¶ 35, 36. C. Mathison Aff. at ¶¶ 7, 8, 9.

Plaintiff, Diane Hurley, asserts that while engaging in work for the Defendants she was subjected to egregious workplace harassment, discrimination, and subsequently wrongfully terminated. Subsequent to her wrongful termination, she filed allegations of sex discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). The EEOC chose not to pursue her allegations based on lack of jurisdiction arising out of the independent contractor relationship and issued a Right to Sue Letter, based on her "independent contractor status" (Plaintiff Diane Hurley's Complaint, Exhibit A, B). As a result she filed suit in this Honorable Court.

The Plaintiffs in both actions contend that this Honorable Court is the proper location for their respective matters.

## ARGUMENT

### I. THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS AND, AS SUCH, THEIR MOTION TO DISMISS MUST BE DENIED

**1. Legal Standard**

In order for this Court to apply personal jurisdiction over the Defendants, jurisdiction must comply with (1) the Massachusetts Long Arm Statute (M.G.L. c. 223A, § 3) and (2) due process considerations under the Fourteenth Amendment of the United States Constitution. Mass. Schl. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 f.3D 26, 34-35 (1st Cir. 1998). When a defendant files a Fed. R. Civ. P. 12(b)(2) motion to dismiss the plaintiff must make a showing that personal jurisdiction exists. See Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995). The plaintiff bears the burden of persuading the court that personal

jurisdiction exists. Id. The method applied by the Court to test personal jurisdiction is the prima facie method, which is considered the "most conventional" means utilized by the courts. See. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002), cert. denied sub nom. Scruggs v. Daynard, 123 S.Ct. 558 (2002)(quoting Foster-Miller, 46 F.3d at 145 (internal quotation marks omitted)). Here, to establish a prima facie case that asserts personal jurisdiction over the Defendants, its agents, managers, owners and affiliates, the Plaintiffs, "must go beyond the pleadings and make affirmative proof." Jana Brands, Inc. v. NexiFM, Inc., 2003 U.S. Dist. LEXIS 862 (D. Mass. Jan. 23, 2003)(quoting Chlebda v. H.E. Fortna and Brother, Inc., 609 F.2d 1022, 1024 (1st Cir. 1979)). Accordingly, the Court must accept properly supported proffers of evidence by the plaintiff as true and construe the facts in the light most favorable to the plaintiff. See. Barrett v. Lombardo, 239 F.3d 23, 26-27 (1st Cir. 2001); Mass. Schl. of Law, 142 F.3d at 34. In the instant case the Plaintiff, and Plaintiff Kevin Hurley, meets their burden of persuasion because RL transacted business in Massachusetts and their claims arose from those business dealings.

The elements that favor a finding of jurisdiction under both the Commonwealth of Massachusetts' Long-Arm Statute and the Due Process Clause of the Fourteenth Amendment include, but are not limited to: contacts with persons in Massachusetts through telephone calls, faxes, letters and electronic correspondence; negotiation and evaluation of business relationships; and solicitation and/or client procurement with the state. See Digital Equip. Corp. v. AltaVista Tech., Ltd., 960 F.Supp. 456, 465 (D. Mass. 1997)(court found that "contact with the plaintiff was one part of a broader range of activities....amounted to the transaction of business in Massachusetts"). Here, the Defendants hired the Plaintiffs to open an office in Woburn or Reading Massachusetts, specifically for the purposes of inducing Massachusetts residents to

purchase time shares in Maine. The Plaintiffs both negotiated with the Defendants, pertaining to this enterprise, from their home in Massachusetts via, emails, telephone calls and facsimiles. Moreover, Defendant RL, its agents, managers, representatives, and Defendant Perry Williams subsequently traveled to Massachusetts and together with Plaintiff Kevin Hurley investigated various prospective office locations in Woburn and Reading, Massachusetts. Defendants continuous and systematic actions amounted to business transactions within Massachusetts, and therefore their motion should be denied.

### 2. Massachusetts Long-Arm Statute

The Commonwealth of Massachusetts long-arm statute, M.G.L. c.223A § 3(a) is applied by virtue of Fed.R.Civ.P.4(e) and establishes jurisdiction when the claim arises from "transacting any business in this commonwealth." The Plaintiffs must offer evidence tending to show the following in order to establish jurisdiction under § 3(a): Defendant "transacted business" in Massachusetts and the claim set forth in the complaint "arose from" such transaction of business. See Tatro, 416 Mass. at 767. In Workgroup Technology Corporation v. MGM Grand Hotel, LLC, 246 F.Supp.2d 102 (D.Mass. 2003) the plaintiff, a Massachusetts corporation, contacted the defendant, hotel. The defendant responded by making telephone calls, emails, and sending faxes to the plaintiff, within Massachusetts, for the purpose of negotiating the terms of the parties contract. Id, at 110. In that case the Workgroup Court held that the defendants contacts satisfied the "transacting business" requirement of the Massachusetts long-arm statute. Here, the facts are better than analogous in that Defendants contacted the Plaintiffs at their home, the Plaintiffs resided within Massachusetts and the Defendants instructed them to conduct business from their home. And here, Defendants physically entered Massachusetts, with the specific intent of opening a business within the Commonwealth. The parties discussed the terms of the deal and

9

searched for Massachusetts locations, in addition to requiring and directing Plaintiff to work from within Stoneham, Massachusetts to recruit, staff and organize the establishment of the business seeking to solicit and service Massachusetts.

In Lyle Richards International, Ltd. v. Ashworth, Inc., 132 F.3d 111 (1st Cir. 1997), the court stated that the "arising from" language in the Massachusetts long-arm statute "is to be generously construed in favor of asserting personal jurisdiction" by applying a "but for' causation test" Id. at 114. Moreover, as the gravamen of Plaintiffs' claims are basically and substantially contractual the Court is required to consider all of the parties communications and transactions between the parties, before, during, and after the consummation of the contract to determine the degree and types of contacts the defendant had with the forum, apart from the contract alone. Ganis Corp. v. Jackson, 822 F.2d 194, 197-198 (1st Cir. 1987). Here, the Defendants contacts far exceed the minimal contacts required, under the Massachusetts long-arm statute, for the forum state to assert personal jurisdiction. Therefore, Defendants motion should be denied.

Moreover, when subject matter jurisdiction is premised on the parties diversity of citizenship, the laws of the forum state are used to determine whether personal jurisdiction over the nonresident party is proper. See. Daynard, 290 F.3d at 51. "In Massachusetts, a court may exercise personal jurisdiction over a foreign defendant if such jurisdiction is authorized by the state long-arm statute, and its exercise does not offend the Due Process Clause of the Fourteenth Amendment." See. Champion Exposition Services, Inc. v. Hi-Tech Electric LLC, 273 F.Supp.2d 172, 175 (D. Mass. 2003) (quoting Tatro v. Manor Care, Inc., 416 Mass. 763, 772 (1994)). Mass. Sch. Of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d at 34-35 Massachusetts law states that jurisdiction may be specific or general. This means that the jurisdiction may be asserted through

the existence of a "demonstrable nexus" between the plaintiff's claim and the defendant's contact with the forum state, or even if no nexus exists the defendant's contacts with the forum state are "continuous and systematic." Here, Defendants contacts were continuous and systematic.

In Ealing Corp. v. Harrods Ltd., 790 F.2d 978, 983 (1st Cir. 1986), the court found that personal jurisdiction was proper where the defendant sent a single telex into Massachusetts. Also, "[I]n order to be subject to the jurisdiction of the forum state a nonresident need have only one contact with the forum, so long as the contact is meaningful." See Pritzker v. Yori, 42 F.3d 53, 61 (1st Cir. 1994), cert denied, 514 U.S. 1108 (1995)[1]. Therefore, RL's conduct in negotiating the Plaintiffs' employment contracts, via telephone, facsimile and email as well as instructing the Plaintiffs to work from their home in Massachusetts, in and of itself, demonstrates this Court's jurisdiction over the Defendants. An attempt to participate in the economic life of Massachusetts is sufficient for jurisdiction, even if physical presence is not present. See Fairview Mach. & Tool Co. v. Oakbrook Int'l, Inc., 56 F.Supp.2d 134, 137 (D. Mass. 1999). In the instant matter, the Plaintiffs assert that the Defendants business plan was primarily based on soliciting sales from Massachusetts residents. D.Hurley Aff. at ¶¶ 15, 20, 25, 28, 34, 35. K. Hurley Aff. at ¶¶ 15, 20, 25, 29, 35, 36. C.Mathison Aff. at ¶¶ 6, 7, 8, 9. The parties preliminary negotiations focused on opening an office in Woburn, or Reading, Massachusetts operated by the Plaintiff and her husband and controlled by the Defendants. It is irrelevant whether or not the Defendants followed through with their plans. Perry Williams and Patrick Warner traveled to Massachusetts and investigated various prospective locations throughout Woburn and Reading, Massachusetts.

---

[1] Marine Charter & Storage Ltd. v. Denison Marine, Inc., 701 F.Supp. 930 (D. Mass. 1988)(mailings, telephone calls, and transmission are sufficient for personal jurisdiction); and Bond Leather Co. v. Q.T. Shoe Mfg. Co., 764 F.2d 928 (1st Cir. 1985)(one telephone call and four letters into Massachusetts deemed enough for personal jurisdiction).

11

Even though the Plaintiff, Kevin Hurley, ironically convinced the Defendants that opening an office in New Hampshire, as a central location, would be more productive for sales throughout the Northeast. See JMTR Enterprises, LLC v. Duchin, 42 F.Supp.2d 87 (D. Mass. 1999)(personal jurisdiction found where party sent communications on proposed sale into Massachusetts by telephone, mail, electronic mail and facsimile); see also Johnson Creative Arts, Inc., v. Wool Masters, Inc., 573 F.Supp. 1106 (D. Mass. 1983)(solicitation letters and sales to Massachusetts retailers authorized personal jurisdiction). This is notwithstanding the fact that sales were solicited from Massachusetts' residents and its citizens were specifically targeted and phoned by the Defendants. As such, Defendants' contacts with Massachusetts can be described as pervasive in this matter, and the Plaintiffs submit that they have satisfied their burden by demonstrating that personal jurisdiction over the Defendants exists. See The Giving Back Fund, Inc. v. Steverson, 2002 U.S. Dist. LEXIS 13092 at *6-7 (D. Mass. July 12, 2002)(the literal language of § 3(a) and § 3(c) is easily satisfied and when there are multiple contacts with Massachusetts the case is a "**legal slam dunk** under the statutory prong of personal jurisdiction inquiry" (Emphasis supplied)).

Therefore, based on the above, Plaintiffs' properly made assertions must be held as true, and the Defendants' amenability to jurisdiction in this Court should be determined as a matter of law. See United States v. Swiss American Bank, Ltd., 274 F.3d 610, 619 (1st Cir. 2001). And, as a matter of law, this Honorable Court holds jurisdiction over the Defendants, and their motion should be denied.

### 3. Due Process Clause of the Fourteenth Amendment

This Honorable Court in <u>Champion Exposition Services, Inc. v. Hi-Tech Electric LLC</u>, 273 F.Supp.2d 172, 175 (D. Mass. 2003) set forth the criteria established by the First Circuit as three factors.

> "That showing has three aspects: First the claim underlying the litigation must directly arise out of or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable." <u>Barrett v. Lombardi,</u> 239 F .3d 23, 26 (1st Cir. 2001) (citing <u>United Electrical, Radio & Machine Workers of America v. 163 Pleasant Street Corp.</u>, 960 F.2d 1080,1089)."

In the instant case the contacts with Massachusetts clearly relate to the essence and basic reason for the formation of the contract. And, in <u>Champion</u> this Court held that, "'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing ... must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.'" <u>Id.</u> at 290 (quoting <u>Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. at 2195 (1985)</u>). As discussed above, in connection with the statutory requirements for asserting personal jurisdiction over the Defendants, it is obvious from the facts presented by the Plaintiffs that Defendants' pre-contractual visits and their numerous transmissions, back and forth, regarding their business enterprise and plans to open an office within Massachusetts as well as Defendants email regarding Kevin Hurley's pay structure was instrumental in forming the parties agreement whereby Defendants' would pay commissions to the Plaintiffs.

The second prong of the Fourteenth Amendment analysis is whether contacts with Massachusetts represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of Massachusetts laws and making the

possibility of being haled into court in Massachusetts foreseeable. "The purposeful availment requirement ensures that jurisdiction is not premised on 'random, isolated, or fortuitous' contacts with the forum state." <u>Nowak v. Tak How Investments, Ltd</u>, 94 F.3d 708, 716 (1st Cir. 1996) (quoting <u>Sawtelle v. Farrell</u>, 70 F.3d 1381, 1391 (1st Cir. 1995)). Based on the above, Plaintiffs' assert that Defendants' contacts were deliberate **and not random.** Perry Williams and Patrick Warner traveled to Massachusetts and together with Plaintiff Kevin Hurley investigated various prospective office locations in Woburn and Reading, Massachusetts. These contacts, intended to initially establish a Massachusetts location and presence, and Defendants' subsequent contacts via telephone targeting Massachusetts residents was part of their business plan and intent to conduct business within Massachusetts. In pursuing these actions Defendant assumed the risk and foreseeable possibility of being haled into a Massachusetts court.

The <u>Champion</u> Court states that factor three requires application of "the so-called gestalt factors", which are,

> "(1) the defendants' burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiffs interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies."

<u>Nowak</u>, 94 F 3d at 717 (citing <u>United Electrical, Radio & Machine Workers of America</u>, 960 F.2d at 1088). <u>Id</u>.

Based on the above, Plaintiffs' contend that there appears to be no special burden in the Defendants' appearing in Massachusetts. In fact, Portland, Maine is similar in distance from Boston and Manchester, New Hampshire. In addition, the distance difference between Salem New Hampshire and Boston is only about 20 miles. However, since the Defendants have testified they live in Maine, Boston does not appear to be a burden.

Additionally, as this court stated in Champion Exposition Services, Inc. v. Hi-Tech Electric LLC, 273 F.Supp.2d 172, 175 (D. Mass. 2003), "[w]ith regard to the second of the gestalt factors, it is clear that Massachusetts has a significant interest in ensuring that contracts entered into by Massachusetts residents are given full effect." Id. Defendants are unclear as to which forum has a significant interest. The Plaintiffs submit that Massachusetts clearly has such interest. Neither New Hampshire nor Maine can claim interest in the essence of this contract (i.e. selling and servicing Massachusetts residents). While the Massachusetts consumers are not parties to this action they are the very reason for its existence. As in Champion, "convenient and effective relief-is clearly served in Massachusetts" in this matter.

The fourth gestalt factor reasoning is similar if not the same as factor one. Based on the distances, efficiency and relative hardships, there is no reason to consider Massachusetts inappropriate.

The public policy interests of Massachusetts constitute a legitimate interest in regulating business, which derive their essence from labors directed at and intimately connected with Massachusetts. Were it not for the Massachusetts interest, the contracts and Plaintiffs' work for the Defendants would have been unnecessary and/or undesirable.

The decision to change venue is in the trial judge's discretion. See Coady v. Ashcraft & Gerel, 223 F 3d 1, 11 (1st Cir. 2000). "[T]he defendant must bear the burden of proving both the availability of an adequate alternative forum and that considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum." Nowak, 94 F 3d at 719. The plaintiffs choice of forum will be disturbed only rarely. Champion Exposition Services, Inc. v. Hi-Tech Electric LLC, 273 F.Supp.2d 172, 175 (D. Mass. 2003).

Based on the foregoing, the Plaintiffs contend that they meet all factors under the Due Process Clause of the Fourteenth Amendment. Therefore, the Defendants Amended Motion to Dismiss should be denied.

### II. THE DEFENDANTS ASSERTION THAT THIS MATTER SHOULD BE DISMISSED DUE TO MINOR ERROR IS INCONGRUOUS.

The Defendants contend that Rangeley Lake Development Company, LLC., does not exist and rely on their assertion that Rangeley Lake Vacation Club, LLC is the proper Defendant in this matter. Defendants further state that Rangeley Lake Vacation Club, LLC is a business with principal offices in the State of New Hampshire. However, the independent contractor agreement between the Plaintiff's husband, Kevin Hurley and Rangeley Lake Vacation Club, LLC notes a place of business at 190 Riverside Street, Unit 2B, Portland, Maine 04103 (See Independent Contractor agreement attached to affidavits). It is also noted that the company maintains an office in Portland. The salient facts clearly show that an agreement was formed in or about, June 2003, well before the New Hampshire Corporation was formed on July 7, 2003. The parties written document was merely memorializing Plaintiff, Kevin Hurley's, original agreement with the Defendants.

The Defendants clearly held themselves out as the owners and contracting as well as controlling party. The numerous offices and names held by the officers, owners, managers, if they were in fact different, were represented and held out to be the same. If it is a technical mistake it is surely a curable minor mistake caused by Defendants' course of conduct and surely an unfair business practice should it be raised as a shield in the present circumstances. The Plaintiffs filed against a fully affiliated, company with whom they had negotiated their deals and/or contracts. The parties to the action, including the Plaintiffs, are the same.

The Rules of Civil Procedure encourage the liberal allowance of amendments to pleadings in order to assist parties to maintain their claims, and have them determined on the merits. Fed.R.Civ.P.15(a). Rule 15(a) also dictates that leave of the court to amend a pleading, "shall be freely given when justice so requires." Here, the fact that the name of one Defendant is vaguely incorrect is inconsequential. The interests of justice would be rightly served allowing the Plaintiff leave to amend her Complaint and to proceed on the merits of the matter.

While the opportunity to amend is discretionary with the court, a denial of an opportunity to amend without any justifying reason is merely an abuse of that discretion and inconsistent with the spirit of the Federal Rules. See Foman v. Davis, 371 U.S.178, 182, 83 S.Ct. 227, 230, 9 L.Ed.222, 226 (1962), on remand, 316 F.2d 254 (1st Cir. 1963). Cases are to be decided on the merits, not by technical arguments. Id. Substantial reason has been stated to be undue delay, bad faith and undue prejudice or the imminence of trial.

Overall, the action of the Plaintiffs being allowed to amend the Complaint for the primary purpose of minor name change is warranted, should be allowed and should not affect the facts of the Defendants' baseless Amended Motion to Dismiss, and the Plaintiff's Opposition thereto. Therefore, the name of the Defendants considerations should not even be considered with respect to the Defendants' Amended Motion to Dismiss.

## CONCLUSION

For reasons discussed above with supporting documents hereto, the Court should deny Defendants' Amended Motion to Dismiss.

RESPECTFULLY SUBMITTED,
DIANE HURLEY
By her attorneys,

**Dated:** May 23, 2005

_____
Richard C. Chambers, Jr.
BBO#651251
Chambers Law Offices
855R Broadway, Suite 101
Saugus, MA 01906
Tel: (781) 231-9432

- and -

_____
Paul L. Kenny
BBO# 268820
42 High Street
Medford, MA 02155
Tel: (781) 393-6603

### CERTIFICATE OF SERVICE

I, Richard C. Chambers, Jr., hereby certify that a true copy of the foregoing document was served upon Roy T. Pierce, attorney of record for the Defendants, by first class mail, postage prepaid to said counsel at: PRETI, FLAHERTY, BELIVEAU, PACHIOS & HALEY, LLP, One City Center, P.O. Box 9546, Portland, ME 04112-9546.

**Dated:** May 23, 2005

_____
Richard C. Chambers, Jr.